IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Civil Action No. 24-CV-00001**

NATIONAL ASSOCIATION FOR GUN RIGHTS
CHRISTOPHER JAMES HIESTAND RICHARDSON,
MAX EDWIN SCHLOSSER
JOHN MARK HOWARD, and
ROCKY MOUNTAIN GUN OWNERS

     Plaintiffs,

v.

JARED S. POLIS, in his official capacity as Governor of the State of Colorado

     Defendant.

---

**COMPLAINT**

---

Plaintiffs National Association for Gun Rights ("NAGR"), Christopher James Hiestand Richardson ("Richardson"), Max Edwin Schlosser ("Schlosser"), John Mark Howard ("Howard"), and Rocky Mountain Gun Owners ("RMGO") submit the following complaint.

## I. INTRODUCTION

1. "Because gunsmithing was a universal need in early America, many early Americans who were professionals in other occupations engaged in gunsmithing as an additional occupation or hobby." Joseph G.S. Greenlee, *The American Tradition of Self-Made Arms* ("*American Tradition*"), 54 St. Mary's L.J. 35, 66 (2023). The fact that this tradition arose early on these shores was especially fortunate during the

1

Revolutionary War, because when the British attempted to prevent the Americans from acquiring firearms and ammunition, the Americans were able to make their own. *Id.*, at 48.

2. The tradition of at-home gun-making predates this nation's founding, extends through the revolution, and reaches modern times. *VanDerStok v. Garland*, 86 F.4th 179, 185 (5th Cir. 2023). The federal government has never required a license to build a firearm for personal use. *Id.* (internal citation and quotation marks omitted). In fact, there were *no* restrictions on the manufacture of arms for personal use in America during the seventeenth, eighteenth, or nineteenth centuries." *Id.* (internal citation and quotation marks omitted; emphasis in original).

3. Today, privately made firearms ("PMFs") are often made from readily purchasable firearm parts kits, standalone frame or receiver parts, and easy-to-complete frames or receivers. *Id.* For example, Polymer80, Inc. ("Polymer80") is an American manufacturer of parts kits containing firearm parts including unfinished receivers frequently used for making PMFs. These kits and standalone parts have never been themselves considered "firearms" under any interpretation of the federal Gun Control Act of 1968 ("CGA") and related Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") regulations. *Id.* Further, when made for personal use, PMFs are not required by the GCA to have a serial number placed on the frame or receiver. *Id.*

4. In *VanDerStok*, the ATF attempted to bypass Congress and interrupt this centuries-long tradition through agency rulemaking process. The Fifth Circuit held

that the ATF had overstepped its authority and struck down its rule requiring serial numbers on PMF kits. *Id.*, 86 F.4th at 197.

5.  In 2023, the Colorado General Assembly enacted C.R.S. § 18-12-111.5 (the "Statute"). A copy of the Statute is attached as Exhibit A. Similar to the ATF rule struck down in *VanDerStok*, the Statute imposes burdens on the tradition of privately made firearms, a tradition that dates back to before the Revolution. Plaintiff's proposed conduct of making and possessing PMFs is covered by the plain text of the Second Amendment. The Statute's prohibition of that conduct is not consistent with this Nation's history and tradition of firearms regulations. Therefore, the Statute violates Plaintiffs' Second Amendment rights, and they request the Court to enjoin this unconstitutional law.

## II.  PARTIES

6.  Plaintiff NAGR is a nonprofit organization. NAGR seeks to defend the right of all law-abiding individuals to keep and bear arms. NAGR has members who reside in Colorado who desire to exercise their Second Amendment right to acquire firearms parts kits and assemble PMFs free of the unconstitutional burden on that conduct imposed by the Statute. The initials of eight of these members who have engaged in this conduct and desire to continue to do so are SH, TR, RF, LZ, DB, IB, HH and EJ. NAGR represents the interests of these and other of its members.

7.  Plaintiff Richardson is a law-abiding citizen of Colorado. He is a member of RMGO. Within the last two and a half years, Richardson has purchased firearms parts kits from Polymer80. He has assembled handguns from these kits. Richardson

desires to continue purchasing firearms parts kits and assembling them into firearms free of the unconstitutional burden on this conduct imposed by the Statute, and but for the Statute he would in fact continue to do so.

8. Plaintiff Schlosser is a law-abiding citizen of Colorado. He is a member of RMGO. Within the last two years, Schlosser has purchased firearms parts kits from Polymer80. He has assembled a handgun from one of these kits. Schlosser desires to continue purchasing firearms parts kits and assembling them into firearms free of the unconstitutional burden on this conduct imposed by the Statute, and but for the Statute he would in fact continue to do so.

9. Plaintiff Howard is a law-abiding citizen of Colorado. He is a member of both NAGR and RMGO. Within the last two years, Howard has purchased firearms parts kits from Polymer80. He has assembled handguns from these kits. Howard desires to continue purchasing firearms parts kits and assembling them into firearms free of the unconstitutional burden on this conduct imposed by the Statute, and but for the Statute he would in fact continue to do so

10. Plaintiff RMGO is a nonprofit organization. RMGO seeks to defend the right of all law-abiding individuals to keep and bear arms. RMGO has members who reside in Colorado who desire to exercise their Second Amendment right to acquire firearms parts kits and assemble PMFs free of the unconstitutional burden on that conduct imposed by the Statute. The initials of 14 of these members who have engaged in this conduct and desire to continue to do so are DLW, TS, PH, BA, DM III, LD, RH, TC,

IE, JM, DM, AP, TO, and MR. RMGO represents the interests of these and other of its members.

11. Defendant Jared S. Polis is the Governor of the State of Colorado. This action is brought against him in his official capacity. The Colorado Constitution states that the "supreme executive power of the state shall be vested in the governor, who shall take care that the laws be faithfully executed." Colo. Const. Art. IV, § 2. Colorado has long recognized the practice of naming the governor, in his official role as the state's chief executive, as the proper Defendant in cases where a party seeks to enjoin state enforcement of a statute, regulation, ordinance, or policy. *See Developmental Pathways v. Ritter*, 178 P.3d 524, 529 (Colo. 2008). The Governor, in his official capacity, possesses sufficient authority to enforce (and control the enforcement of) the complained-of statute. *Cooke v. Hickenlooper*, 2013 WL 6384218, at *8 (D. Colo. Nov. 27, 2013), *aff'd in part sub nom. Colorado Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537 (10th Cir. 2016).

12. Defendant is or will enforce the unconstitutional provisions of the Statute against Plaintiffs under color of state law within the meaning of 42 U.S.C. § 1983.

### III. JURISDICTION AND VENUE

13. The Court has original jurisdiction of this civil action under 28 U.S.C. § 1331, because the action arises under the Constitution and laws of the United States. The Court also has jurisdiction under 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983 since this action seeks to redress the deprivation, under color of the laws,

ordinances, regulations, customs and usages of the State, of rights, privileges or immunities secured by the United States.

14. Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, respectively, and their claim for attorneys' fees is authorized by 42 U.S.C. § 1988.

15. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## IV. GENERAL ALLEGATIONS

16. The Second Amendment to the United States Constitution declares that "the right of the people to keep and bear arms shall not be infringed." U.S. CONST. amend. II; *see also D.C. v. Heller*, 554 U.S. 570 (2008); *McDonald v. City of Chicago*, 561 U.S. 742 (2010); and *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).

17. The right to keep and bear arms recognized in the Second Amendment is made applicable to the states by the Fourteenth Amendment. *McDonald*, supra.

18. In *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1, 17 (2022), the Supreme Court set forth the test to be used for analyzing Second Amendment challenges:

> In keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with

6

this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command.

19. Handguns are the "quintessential self-defense weapon," and the right of law-abiding citizens to acquire them for the purpose of self-defense (especially in the home) is protected by the Second Amendment. *Heller*, 554 U.S. at 629. "Applied to self-built arms, as long as the type of arm is common, it is protected. For example, since *Heller* held that handguns are protected arms, if an individual constructs his own handgun, it is protected." *American Tradition*, 39.

20. Plaintiffs' proposed conduct of acquiring and possessing unfinished frames and receivers and privately made firearms, including handguns, that cannot be traced through serial numbers is covered by the plain text of the Second Amendment. *See Rigby v. Jennings*, 630 F. Supp. 3d 602, 613 (D. Del. 2022) (enjoining Delaware statute similar to Colorado Statute).

21. Plaintiffs' proposed conduct of privately manufacturing firearms, including handguns, is covered by the plain text of the Second Amendment, because the right to keep and bear arms implies a right to manufacture arms. *See Rigby*, 630 F. Supp. 3d at 615.

22. Because Plaintiffs' proposed conduct is covered by the plain text of the Second Amendment, that conduct is presumptively protected by the Constitution, and the Statute's prohibition of that conduct is presumptively unconstitutional.

23. The State will not be able to rebut the presumption of unconstitutionality because the Statute is not consistent with the Nation's history and tradition of firearms regulation.

7

24.     Since the earliest colonial days, Americans have manufactured arms. *American Tradition*, 36. The ability to defend one's home and community, hunt, fight wars, and ultimately win American independence depended largely on the ability to produce arms, and many Americans made their own arms rather than depend on others. *Id*.

25.     "Meanwhile, restrictions on self-made arms have been rare throughout American history." *Id*. Thus, regulations on self-built arms are not longstanding. *Id*. "In fact, there were no restrictions on the manufacture of arms for personal use in America during the seventeenth, eighteenth, or nineteenth centuries. All such restrictions have been enacted within the last decade." *Id*. at 78.

26.     It is lawful to build arms for personal use under federal law and in forty-four states [now 43 with the passage of the Colorado statute], with no special restrictions. *Id*. at 80. Only six states [now seven] and the District of Columbia regulate the manufacture of arms for personal use. *Id*. This is almost identical to the jurisdictional analysis that led the *Caetano v. Massachusetts*, 577 U.S. 411 (2016) (per curiam) concurrence to conclude that stun guns were protected arms. *Id*.

27.     "The correct starting orientation is that no arm may be prohibited. If a plaintiff challenges the government's prohibition, it is on the government first to prove the banned arm is dangerous and unusual, and if not that it is not commonly possessed, or not commonly possessed by law-abiding citizens, or not commonly possessed for lawful purposes or militia readiness." *Rigby*, 630 F. Supp. 3d at 614 n. 13 (D. Del. 2022) (internal citation and quotation marks omitted).

28. 18 U.S.C.A. § 922(k) makes it illegal under federal law to possess any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered. A division of this Court rejected a Second Amendment challenge to the federal statute in *United States v. Avila*, 2023 WL 3305934 (D. Colo. May 8, 2023). *Avila* is distinguishable from this case on at least two grounds. First, the federal statute applies only to the obliteration of serial numbers on a previously serialized firearm. In contrast, the Colorado Statute requires law-abiding citizens to affix serial numbers to any PFM in the first instance. There is a significant difference between a Statute that prevents a criminal from obliterating a pre-existing serial number, and a statute that burdens a law-abiding citizen engaged in the centuries-long American tradition of at-home gun making. Second, the federal statute applies to completed firearms, whereas the Colorado statute goes much further and requires firearm parts to be serialized. There is no Founding-era law analogous to a modern law requiring the serialization of firearm parts.

## V. FIRST CLAIM FOR RELIEF
**Right to Keep and Bear Arms**
**U.S. Const., amends. II and XIV**

29. The allegations contained in the previous paragraphs are realleged and incorporated by reference.

30. The Statute burdens the right of residents of the State, including Plaintiffs, in exercising their right to keep and bear arms protected by the Second Amendment. There are significant penalties for violations of the law.

31. These restrictions infringe Plaintiffs' rights guaranteed by the Second Amendment, which is made applicable to Colorado by the Fourteenth Amendment.

32. The Act's prohibitions burden the acquisition and possession of firearms and parts for making firearms, including handguns, for the purpose of self-defense in the home, where Second Amendment protections are at their zenith.

33. The State cannot meet its burden of justifying these restrictions on the Second Amendment right of the People by demonstrating that they are consistent with this Nation's historical tradition of firearm regulation.

## VI. PRAYER FOR RELIEF

Plaintiffs pray that the Court:

34. Enter a declaratory judgment pursuant to 28 U.S.C. § 2201 that the Statute is unconstitutional on its and face or as applied;

35. Enter a TRO and preliminary and permanent injunctive relief enjoining Defendant and his officers, agents, and employees from enforcing the Statute;

36. Award remedies available under 42 U.S.C. § 1983 and all reasonable attorneys' fees, costs, and expenses under 42 U.S.C. § 1988, or any other applicable law;

37. Grant any such other and further relief as the Court may deem proper.

*/s/ Barry K. Arrington*

---

Barry K. Arrington
Arrington Law Firm
4195 Wadsworth Boulevard
Wheat Ridge, Colorado 80033
(303) 205-7870
Email: barry@arringtonpc.com