IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Civil Action No. 24-cv-00001-STV**

NATIONAL ASSOCIATION FOR GUN RIGHTS
CHRISTOPHER JAMES HIESTAND RICHARDSON,
MAX EDWIN SCHLOSSER
JOHN MARK HOWARD, and
ROCKY MOUNTAIN GUN OWNERS

    Plaintiffs,

v.

JARED S. POLIS, in his official capacity as Governor of the State of Colorado

    Defendant.

---

**MOTION FOR TEMPORARY INJUNCTION**

---

Plaintiffs National Association for Gun Rights ("NAGR"), Christopher James Hiestand Richardson ("Richardson"), Max Edwin Schlosser ("Schlosser"), John Mark Howard ("Howard"), and Rocky Mountain Gun Owners ("RMGO") move the Court to enter a Preliminary Injunction. As grounds for this motion, they state:

### I. INTRODUCTION

"Because gunsmithing was a universal need in early America, many early Americans who were professionals in other occupations engaged in gunsmithing as an additional occupation or hobby." Joseph G.S. Greenlee, *The American Tradition of Self-Made Arms* ("*American Tradition*"), 54 St. Mary's L.J. 35, 66 (2023). The fact that this tradition arose early on these shores was especially fortunate during the

1

Revolutionary War, because when the British attempted to prevent the Americans from acquiring firearms and ammunition, the Americans were able to make their own. *Id.*, at 48.

The tradition of at-home gun-making predates this nation's founding, extends through the revolution, and reaches modern times. *VanDerStok v. Garland*, 86 F.4th 179, 185 (5th Cir. 2023). The federal government has never required a license to build a firearm for personal use. *Id.* (internal citation and quotation marks omitted). In fact, there were *no* restrictions on the manufacture of arms for personal use in America during the seventeenth, eighteenth, or nineteenth centuries." *Id.* (internal citation and quotation marks omitted; emphasis in original).

Today, privately made firearms ("PMFs") are often made from readily purchasable firearm parts kits, standalone frame or receiver parts, and easy-to-complete frames or receivers. *Id.* For example, Polymer80, Inc. ("Polymer80") is an American manufacturer of parts kits containing firearm parts including unfinished receivers frequently used for making PMFs. These kits and standalone parts have never been themselves considered "firearms" under any interpretation of the federal Gun Control Act of 1968 ("CGA") and related Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") regulations. *Id.* Further, when made for personal use, PMFs are not required by the GCA to have a serial number placed on the frame or receiver. *Id.*

In *VanDerStok*, the ATF attempted to bypass Congress and interrupt this centuries-long tradition through the agency rulemaking process. The Fifth Circuit

2

held that the ATF had overstepped its authority and struck down its rule requiring serial numbers on PMF kits. *Id.*, 86 F.4th at 197.

In 2023, the Colorado General Assembly enacted C.R.S. § 18-12-111.5 (the "Statute"). A copy of the Statute is attached as Exhibit A. Similar to the ATF rule struck down in *VanDerStok*, the Statute imposes burdens on the tradition of privately made firearms, a tradition that dates back to before the Revolution. Plaintiff's proposed conduct of making and possessing PMFs is covered by the plain text of the Second Amendment. The Statute's prohibition of that conduct is not consistent with this Nation's history and tradition of firearms regulations. Therefore, the Statute violates Plaintiffs' Second Amendment rights, and they request the Court to enjoin this unconstitutional law.

## II. FACTS

### A. Plaintiffs and Their Proposed Conduct

1. Plaintiff Richardson is a law-abiding citizen of Colorado. Declaration of Christopher James Hiestand Richardson ¶ 2. He is a member of RMGO. *Id.* Within the last two and a half years, Richardson has purchased firearms parts kits from Polymer80. *Id.* He has assembled handguns from these kits. *Id.* Richardson desires to continue purchasing firearms parts kits and assembling them into firearms free of the unconstitutional burden on this conduct imposed by the Statute, and but for the Statute he would in fact continue to do so. *Id.*

2. Plaintiff Schlosser is a law-abiding citizen of Colorado. Declaration of Max Edwin Schlosser ¶ 2. He is a member of RMGO. *Id.* Within the last two years,

3

Schlosser has purchased firearms parts kits from Polymer80. *Id.* He has assembled a handgun from one of these kits. *Id.* Schlosser desires to continue purchasing firearms parts kits and assembling them into firearms free of the unconstitutional burden on this conduct imposed by the Statute, and but for the Statute he would in fact continue to do so. *Id.*

3. Plaintiff Howard is a law-abiding citizen of Colorado. Declaration of John Mark Howard ¶ 2. He is a member of both NAGR and RMGO. *Id.* Within the last two years, Howard has purchased firearms parts kits from Polymer80. He has assembled handguns from these kits. *Id.* Howard desires to continue purchasing firearms parts kits and assembling them into firearms free of the unconstitutional burden on this conduct imposed by the Statute, and but for the Statute he would in fact continue to do so. *Id.*

4. Plaintiff RMGO is a nonprofit organization. Declaration of Taylor Rhodes ¶ 3. RMGO seeks to defend the right of all law-abiding individuals to keep and bear arms. *Id.* RMGO has members who reside in Colorado who desire to exercise their Second Amendment right to acquire firearms parts kits and assemble PMFs free of the unconstitutional burden on that conduct imposed by the Statute. *Id.* The initials of 14 of these members who have engaged in this conduct and desire to continue to do so are DLW, TS, PH, BA, DM III, LD, RH, TC, IE, JM, DM, AP, TO, and MR. *Id.* RMGO represents the interests of these and other of its members. *Id.*

5. Plaintiff NAGR is a nonprofit organization. Rhodes Dec. ¶ 4. NAGR seeks to defend the right of all law-abiding individuals to keep and bear arms. *Id.*

NAGR has members who reside in Colorado who desire to exercise their Second Amendment right to acquire firearms parts kits and assemble PMFs free of the unconstitutional burden on that conduct imposed by the Statute. *Id.* The initials of eight of these members who have engaged in this conduct and desire to continue to do so are SH, TR, RF, LZ, DB, IB, HH and EJ. *Id.* NAGR represents the interests of these and other of its members. *Id.*

**B.  Defendant**

6.  Defendant Jared S. Polis is the Governor of the State of Colorado. This action is brought against him in his official capacity. The Colorado Constitution states that the "supreme executive power of the state shall be vested in the governor, who shall take care that the laws be faithfully executed." Colo. Const. Art. IV, § 2. Colorado has long recognized the practice of naming the governor, in his official role as the state's chief executive, as the proper Defendant in cases where a party seeks to enjoin state enforcement of a statute, regulation, ordinance, or policy. *See Developmental Pathways v. Ritter*, 178 P.3d 524, 529 (Colo. 2008). The Governor, in his official capacity, possesses sufficient authority to enforce (and control the enforcement of) the complained-of statute. *Cooke v. Hickenlooper*, 2013 WL 6384218, at *8 (D. Colo. Nov. 27, 2013), *aff'd in part sub nom. Colorado Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537 (10th Cir. 2016). Defendant is or will enforce the unconstitutional provisions of the law against Plaintiffs under color of state law within the meaning of 42 U.S.C. § 1983.

**C.  The Statute**

   7.  C.R.S. § 18-12-111.5(1)(a) states:

A person shall not knowingly possess or transport an unfinished frame or receiver; except that it is not an offense if the unfinished frame or receiver is required by federal law to be imprinted with a serial number and has been imprinted with a serial number by a federal firearms licensee pursuant to federal law or subsection (7) of this section.

   8.  C.R.S. § 18-12-111.5(2)(a) states:

A person shall not knowingly sell, offer to sell, transfer, or purchase an unfinished frame or receiver; except that it is not an offense if the unfinished frame or receiver is required by federal law to be imprinted with a serial number and has been imprinted with a serial number by a federal firearms licensee pursuant to federal law or subsection (7) of this section.

   9.  C.R.S. § 18-12-111.5(3)(a) states:

A person shall not knowingly possess, purchase, transport, or receive a firearm or frame or receiver of a firearm that is not imprinted with a serial number by a federal firearms licensee authorized to imprint a serial number on a firearm, frame, or receiver pursuant to federal law or subsection (7) of this section.

   10.  C.R.S. § 18-12-111.5(4)(a) states:

A person shall not knowingly sell, offer to sell, or transfer a firearm or frame or receiver of a firearm that is not imprinted with a serial number by a federal firearms licensee authorized to imprint a serial number on a firearm pursuant to federal law or subsection (7) of this section.

   11.  C.R.S. § 18-12-111.5(5)(a)(I) states:

A person shall not manufacture or cause to be manufactured, including through the use of a three-dimensional printer, a frame or receiver of a firearm.

### III. STANDARD FOR OBTAINING RELIEF

To obtain a preliminary injunction, the movant must show: (1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the

6

injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest. *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007).

## IV. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

### A. The Legal Framework of Second Amendment Challenges

The Second Amendment to the United States Constitution declares that "the right of the people to keep and bear arms shall not be infringed." U.S. CONST. amend. II; *see also D.C. v. Heller*, 554 U.S. 570 (2008); *McDonald v. City of Chicago*, 561 U.S. 742 (2010); and *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). The right to keep and bear arms recognized in the Second Amendment is made applicable to the states by the Fourteenth Amendment. *McDonald, supra.* In *Bruen*, the Court set forth the following standard for resolving Second Amendment challenges: "We reiterate that the standard for applying the Second Amendment is as follows: [1] When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. [2] The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.*, 597 U.S. at 24.

### B. The Plain Text Covers Plaintiffs' Conduct

Handguns are the "quintessential self-defense weapon," and the right of law-abiding citizens to acquire them for the purpose of self-defense (especially in the home) is protected by the Second Amendment. *Heller*, 554 U.S. at 629. "Applied to

7

self-built arms, as long as the type of arm is common, it is protected. For example, since *Heller* held that handguns are protected arms, if an individual constructs his own handgun, it is protected." *American Tradition*, 39.

Plaintiffs' proposed conduct of acquiring and possessing unfinished frames and receivers and privately made firearms, including handguns, that cannot be traced through serial numbers is covered by the plain text of the Second Amendment. *See Rigby v. Jennings*, 630 F. Supp. 3d 602, 613 (D. Del. 2022) (enjoining Delaware statute similar to Colorado Statute). Plaintiffs' proposed conduct of privately manufacturing firearms, including handguns, is covered by the plain text of the Second Amendment, because the right to keep and bear arms implies a right to manufacture arms. *See Rigby*, 630 F. Supp. 3d at 615.

Because Plaintiffs' proposed conduct is covered by the plain text of the Second Amendment, that conduct is presumptively protected by the Constitution, and the Statute's prohibition of that conduct is presumptively unconstitutional.

**C.   The Statute is Not Consistent with the Nation's History and Tradition of Firearms Regulation**

The State may attempt to rebut the presumption of unconstitutionality by demonstrating that the Statute is consistent with the Nation's historical tradition of firearm regulation. But it is impossible for the State to meet this burden. Since the earliest colonial days, Americans have manufactured arms. *American Tradition*, 36. The ability to defend one's home and community, hunt, fight wars, and ultimately win American independence depended largely on the ability to produce arms, and many Americans made their own arms rather than depend on others. *Id*.

8

"Meanwhile, restrictions on self-made arms have been rare throughout American history." *Id*. Thus, regulations on self-built arms are not longstanding. *Id*. "In fact, there were no restrictions on the manufacture of arms for personal use in America during the seventeenth, eighteenth, or nineteenth centuries. All such restrictions have been enacted within the last decade." *Id*. at 78.

It is lawful to build arms for personal use under federal law and in forty-four states [now 43 with the passage of the Colorado statute], with no special restrictions. *Id*. at 80. Only six states [now seven] and the District of Columbia regulate the manufacture of arms for personal use. *Id*. This is almost identical to the jurisdictional analysis that led the *Caetano v. Massachusetts*, 577 U.S. 411 (2016) (per curiam) concurrence to conclude that stun guns were protected arms. *Id*.

"The correct starting orientation is that no arm may be prohibited. If a plaintiff challenges the government's prohibition, it is on the government first to prove the banned arm is dangerous and unusual, and if not that it is not commonly possessed, or not commonly possessed by law-abiding citizens, or not commonly possessed for lawful purposes or militia readiness." *Rigby*, 630 F. Supp. 3d at 614 n. 13 (D. Del. 2022) (internal citation and quotation marks omitted).

18 U.S.C.A. § 922(k) makes it illegal under federal law to possess any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered. A division of this Court rejected a Second Amendment challenge to the federal statute in *United States v. Avila*, 2023 WL 3305934 (D. Colo. May 8, 2023). *Avila* is distinguishable from this case on at least two grounds. First, the federal

9

statute applies only to the obliteration of serial numbers on a previously serialized firearm sold commercially. In contrast, the Colorado Statute requires law-abiding citizens to affix serial numbers to firearms made privately for personal use. There is a significant difference between a statute that prevents a criminal from obliterating a pre-existing serial number on a commercially manufactured firearm and a statute that burdens a law-abiding citizen engaged in the centuries-long American tradition of at-home gun making. Second, the federal statute applies to completed firearms, whereas the Colorado statute goes much further and requires firearm parts to be serialized. There is no Founding-era law analogous to a modern law requiring the serialization of firearm parts. Indeed, such laws arose only in the last decade. *American Tradition*, 78.

### D.  Conclusion

In summary, Plaintiffs have met their burden under *Bruen's* "plain text" step. The plain text of the Second Amendment covers their conduct. The Statute is therefore presumptively unconstitutional. The State cannot carry its burden under *Bruen's* "history and tradition" step because there is no 18th-century (or even 19th- or 20th-century) history or tradition of prohibiting the manufacture and possession of personally made firearms. Accordingly, the State will not be able to rebut the presumption of unconstitutionality, and Plaintiffs will prevail on the merits.

## V. THE REMAINING FACTORS FAVOR ENTRY OF INJUNCTIVE RELIEF

### A.  Plaintiffs Have Suffered Irreparable Harm

Plaintiffs have established that they will prevail on the merits of their constitutional claim. Violation of constitutional rights per se constitutes irreparable

10

injury. *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976) (loss of constitutional freedom "for even minimal periods of time" unquestionably constitutes irreparable injury). Recently, the Ninth Circuit applied the *Elrod* principle in the Second Amendment context. *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023). In *Baird*, the court held that in cases involving a Second Amendment claim, a likelihood of success on the merits usually establishes irreparable harm. *Id.*, at 1048. Moreover, such a likelihood, "strongly tips the balance of equities and public interest in favor of granting" an injunction. *Id. See also Ezell v. City of Chicago*, 651 F.3d 684, 699 (7th Cir. 2011) (also applying principle in Second Amendment context); and *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 805 (10th Cir. 2019) ("Most courts consider the infringement of a constitutional right enough and require no further showing of irreparable injury."); *Aposhian v. Barr*, 958 F.3d 969, 990 (10th Cir. 2020) (collecting cases).

## B.   The Balance of Harms and Public Interest Factors Support Entry of Injunctive Relief

Finally, the balance of harms and public interest factors[1] favor injunctive relief. A plaintiff's likelihood of success on the merits of a Second Amendment claim tips the merged third and fourth factors decisively in his favor, because "public interest concerns are implicated when a constitutional right has been violated, [and] all citizens have a stake in upholding the Constitution." *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023) (internal citation and quotation marks omitted; cleaned

---

[1] These factors merge when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

11

up). In *Chamber of Com. of U.S. v. Edmondson*, 594 F.3d 742, 771 (10th Cir. 2010), the Tenth Circuit held that when applying these factors courts must be mindful that even if a state is pursuing a legitimate goal (in that case deterring illegal immigration), it has no interest in doing so by unconstitutional means, because a state "does not have an interest in enforcing a law that is likely constitutionally infirm." *Id*. "Moreover, the public interest will perforce be served by enjoining the enforcement of the invalid provisions of state law." *Id*. (internal quotation marks and citation omitted). *See also Utah Licensed Beverage Ass'n v. Leavitt*, 256 F.3d 1061, 1076 (10th Cir. 2001) (public interest favors preliminarily enjoining state statutes likely to be held unconstitutional).

Defendants may argue the Statute furthers an important governmental interest. But even if the Statute did further an important policy goal, that fact would be irrelevant under *Bruen*. Indeed, such an argument is in effect a backdoor means-end test of the type rejected by *Bruen*. 597 U.S. at 23 (rejecting means-end scrutiny in Second Amendment cases). "[T]he government may not simply posit that the regulation promotes an important interest [such as public safety]. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.*, 597 U.S. at 17. *Bruen's* rejection of means-end scrutiny would be nullified if courts were to eschew such scrutiny while examining the merits of a Second Amendment claim, only to bring such scrutiny right back in when determining whether to grant a remedy for a constitutional violation. Moreover, "[w]hile the public has an interest in enforcing laws that promote safety or

12

welfare, the public has no cognizable interest in enforcing laws that are unconstitutional. Indeed, the public interest is best served by preventing an unconstitutional enforcement." *Midwest Title Loans, Inc. v. Ripley*, 616 F. Supp. 2d 897, 908 (S.D. Ind. 2009), *aff'd sub nom. Midwest Title Loans, Inc. v. Mills*, 593 F.3d 660 (7th Cir. 2010) (cleaned up) (*citing Newsom v. Albemarle Cnty. Sch. Bd.*, 354 F.3d 249, 261 (4th Cir. 2003)).

## IV.   A Bond is not Necessary

Courts in the Tenth Circuit have wide discretion under Rule 65(c) in determining whether to require security and may, therefore, impose no bond requirement. *New Mexico Cattle Growers' Ass'n v. United States Forest Serv.*, 2023 WL 2185698, at *3 (D.N.M. Feb. 22, 2023) (internal citations and quotation marks omitted). A bond is unnecessary in a case that seeks to enforce a constitutional right against the government. *Rocky Mountain Gun Owners v. Polis*, 2023 WL 5017253, at *20 (D. Colo. Aug. 7, 2023). Therefore, Plaintiffs respectfully request that no bond requirement be imposed.

## VI. CONCLUSION

For the foregoing reasons, plaintiffs respectfully request the Court to enter a temporary restraining order and an order preliminary enjoining enforcement of the Statute.

*/s/ Barry K. Arrington*
_____
Barry K. Arrington
Arrington Law Firm
4195 Wadsworth Boulevard
Wheat Ridge, Colorado 80033

13

Voice:  (303) 205-7870
Email:  barry@arringtonpc.com

# CERTIFICATE OF NOTICE TO
# THE OFFICE OF THE ATTORNEY GENERAL

The Colorado Attorney General's Office accepted service of the Summons and Complaint in this matter on January 15, 2024.

On January 15, 2024, undersigned counsel emailed a copy of the Complaint and this motion to the following members of the Attorney General's Second Amendment team:

Leeann Morrill, First Assistant Attorney General
Emily B. Buckley, Senior Assistant Attorney General
Michael Kotlarczyk, Senior Assistant Attorney General
Peter G. Baumann, Senior Assistant Attorney General
Matthew J. Worthington, Assistant Attorney General
Daniel R. Magalotti, Assistant Attorney General Fellow

at the following email addresses:

leeann.morrill@coag.gov
emily.buckley@coag.gov
mike.kotlarczyk@coag.gov;
peter.baumann@coag.gov
matt.worthington@coag.gov
daniel.magalotti@coag.gov

/s/ Barry K. Arrington
_____
Barry K. Arrington